|,WOODARD, Judge.
This litigation arose out of a collision between a 1980 Mack Convention Truck Tractor and Trailer (the truck) operated by Mr. Don Gautreaux and a single locomotive owned by Southern Pacific Transportation Co. (SP), at the crossing of Parish Road No. 6-17 and SP railway crossing No. SP767-952D (the crossing), located in Jefferson Davis Parish, Louisiana. Mr. Gautreaux died as a result of the collision, and his mother, Ms. Aline Sons Gautreaux, filed suit against SP; Mr. Stephen Hariu, the locomotive engineer; the State of Louisiana, through the Department of Transportation and Development (DOTD); and the Parish of , Jefferson Davis Louisiana (JDP). The trial court granted JDP’s motion for summary judgment filed on December 9, 1998, dismissing it as a defendant. Ms. Gau-treaux appeals. We reverse and remand.
J^FACTS
On September 11, 1989, at approximately 6:55 a.m., Mr. Gautreaux died as a result of a truck/train collision that occurred at the intersection of a gravel parish road and a SP railway crossing located near an oil field area in Jefferson Davis Parish, Louisiana. Mr. Gautreaux was driving his truck in a northerly direction, hauling the large part of a drilling rig, in the course and scope of his employment with Total Transportation Services, Inc. (Total). He attempted to clear the crossing when a westbound SP single unit locomotive, manned by Mr. Hariu, Mr. John Brous-sard, a brakeman, and Mr. Robert Hughes, a' conductor, hit the truck’s cab sideways, destroyed it, and projected Mr. Gautreaux twenty-four feet away from the truck. He died instantly.
Aetna Casualty and Surety Company (Aetna), Total’s workers’ compensation insurer, paid Ms. Gautreaux workers’ compensation death benefits of $20,000.00 and funeral expenses of $3,000.00. On January 5, 1990, she filed suit to recover the damages she suffered as a result of SP’s alleged negligence. Aetna intervened in the litigation on January 29, 1990, claiming reimbursement for the amount it disbursed as a result of the accident. On August 20, 1990, Ms. Gautreaux amended her petition, adding as defendants DOTD, JDP, and Mr. Hariu.
SP, Mr. Hariu, DOTD and JDP all moved for summary judgment. On December 13, 1991, • the trial court denied SP’s, Mr. Hariu’s and JDP’s motions for summary judgment but granted DOTD’s. JDP filed a first supplemental and amending answer on January 27, 1992. A May 28, 1993 judgment dismissed SP and Mr. *728 Hariu pursuant to their settlement with Ms. Gautreaux and Aetna. JDP, sole party defendant remaining in this litigation, again moved for summary judgment on December 12, 1998. The trial court granted its motion on March 18, 1999 after a hearing held on December 9, 1998. Ms. Gautreaux appeals.
Issue
We must decide if the trial court erred when it found that no genuine issues of material fact remained concerning JDP’s liability for negligence.
_|jLAW
At the outset, we note that appellate courts review summary judgments de novo under the same criteria that governed the trial court’s consideration of whether or not summary judgment was appropriate.[1] Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits.show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law.[2]
La.Code Civ.P. art. 966, charges the moving party with the burden of proving that summary judgment is appropriate. In doing so, the moving party’s supporting documentation must be sufficient to establish that no genuine issue of material fact remains at stake.[3] Once the mover makes a prima facie showing that there is no genuine issue as to a material fact and'that summary judgment should be granted, the burden shifts to the nonmover.[4] Furthermore, La.Code Civ.P. art. 967 provides, in pertinent part:
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
The threshold question in reviewing a trial court’s grant of summary judgment is whether a genuine issue of material fact remains.[5] After which, we must determine whether reasonable minds could conclude, based on the facts presented, that the mover is entitled to judgment.[6] Thus, summary judgment is apropos when all relevant facts Dare brought before the court, the relevant facts are undisputed, and the sole remaining issue relates to the legal conclusion" to be drawn from the facts.[7]
Facts are material if they determine the outcome of the legal dispute.[8] The determination of the materiality of a particular fact must be made in light of the relevant substantive law.[9]
Turning to the relevant facts of this case, we note that governing authorities have jurisdiction over roadways and have a legal duty to make them reasonably safe for travel.[10] This includes the duty to *729 erect warning signs and place them in appropriate locations.[11] In the instant case, JDP may be liable if the crossing was unreasonably dangerous, if it had actual or constructive knowledge of the dangerous condition, but did not fashion any remedial measures, and if the unreasonable condition caused the accident.
Initially, we hold that Ms. Gau-treaux’s suit may not be dismissed simply because there may be no evidence creating a genuine issue of material fact regarding JDP’s knowledge that the crossing was unreasonably dangerous. Indeed, because it is based on the determination of subjective facts, the issue of knowledge is rarely appropriate for summary judgment.[12]
Whether a railroad crossing is unreasonably dangerous such as to be a “dangerous trap” hinges on the factual issue whether the view of the motorist is so obstructed that he must place himself in a position of peril, close to the tracks, to gain sight of oncoming trains.[13]
|Jn the case sub judice, the locomotive’s crew members stated that they estimated the truck’s speed at five miles per hour. In his July 11, 1990 deposition, Mr. Hariu testified that he saw the truck a little over one-fourth of a mile before the crossing and that the truck was proceeding slowly, as though it was preparing to stop. Nevertheless, he lost sight of the truck for nearly five seconds, almost immediately before the impact.
Officer Ronald K. Rhodes from the Louisiana State Police, operating out of Lake Charles, Louisiana, responded to the scene and investigated the accident. In an affidavit signed on March 21, 1991, he declared that the part of the road located on the railroad tracks’ south side showed that the truck skidded for eight feet before colliding with the locomotive. He found the truck’s cab windows closed but did not see any significant obstruction of the railroad tracks’ line of sight, except for the sunrise’s glaring, on the crossing’s southeast quarter.
Further, in an affidavit signed on February 21, 1991, Mr. L.R. Vanicor, a SP claims agent, explained that he arrived at the scene at approximately 8:30 a.m. and took a set a photographs, which he states accurately depict the crossing’s condition the morning of the accident. Based on these photographs, JPD asserts that Mr. Gautreaux’s eastern line of sight was sufficient to allow him to stop the truck in time to avoid the locomotive.
Nevertheless, in a deposition taken on July 11, 1991, Mr. James Carrell, another Total employee, who arrived at the scene within minutes after the occurrence of the accident, asserted that Mr. Vanicor’s pictures did not accurately depict the view of the road’s southeast corner. Namely, he described the presence of timber “a lot closer to the road,” and stated, “Looks (sic) like there’s been a bunch of trees cut down right here ... [t]o the east_ I guarantee you had to be closer than twenty-five feet (25’) to see down the track.”
Additionally, in his December 18, 1998 deposition, Mr. Duaine T. Evans, a consulting traffic engineer, after inspecting the crossing in person and from Mr. Vani-cor’s photographs, opined that Mr. Gau-treaux did not have sufficient sight distance to react and stop in order to yield to the train. He conceded to the presence of proper and allowable cross-bucks, but stated that it was not an adequate warning for the crossing. He summarized his opinion in a December 28, 1998 affidavit, as follows:
|fiIn my opinion, this crossing was inherently dangerous as it existed on the *730 day of the accident for the following reasons:
1. There was a restricted sight distance.
2. Maximum speed limit was too high for conditions.
3. There was no advance warnings (which are mandatory in the Manual on Uniform Traffic Control Devices)
4. There were no other controls such as a stop sign (which is permitted in the MUTCD. There are 4 requirements for such use and this crossing meets all four)
It is my further opinion that had a Stop sign been in place, this accident probably would not have occurred.
Relying on LeJeune v. Union Pacific R.R.,[14] and La.R.S. 32:171, the trial court disregarded the evidence introduced on Ms. Gautreaux’s behalf stating the following:
Mr. Gautreaux had a duty to stop within fifty (50) feet but not less than fifteen (15) feet of the nearest rail, and not go on until he could do so safely. A motorist approaching a railroad crossing must look and listen for possible oncoming trains before traversing the crossing. Motorists must keep their vehicle under such control as to be able to stop immediately upon spotting an oncoming train. Mr. Gautreaux had a duty as a prudent driver to approach this intersection in a safe manner with his vehicle under control. This duty even called for him to stop if necessary, and not continue until he could discover whether there was a train approaching the crossing. This duty was not relieved if his view of the approaching train was impaired as he approached the intersection. Rather, it imposed a higher duty on him to take extra precautions.
(Footnotes omitted.)
We disagree with the trial court’s conclusion. The issue raised by the evidence does not concern Mr. Gautreaux’s duty to conform to the crossing signals once he realized the presence of an oncoming railway crossing, as suggested by the trial court. On the contrary, the issue relates to the adequacy, condition, and maintenance of the signals that are placed to make the driver aware of a railway crossing. Obviously, wejjcannot hold Mr. Gau-treaux liable to a certain level of diligence if, through no fault of his own, he did not realize the proximity of the oncoming railway crossing.
Furthermore, the supreme court decision in Lejeune did not arise under a motion for summary judgment where it is inappropriate to evaluate the weight of the evidence.[15] In that case, the supreme court simply reinstated a jury’s fact finding that a railroad company was not at fault.
Therefore, finding that there are material facts in dispute regarding JDP’s possible liability, we reverse and remand the case to the trial court for further proceedings.
CONCLUSION
The trial court’s grant of JDP’s motion for summary judgment is reversed. We assess the costs of this appeal to the Parish of Jefferson Davis.
REVERSED AND REMANDED.

. Schroeder v. Board of Sup’rs of La. State Univ., 591 So.2d 342 (La.1991); Soileau v. D & J Tire, Inc., 97-318 (La.App. 3 Cir. 10/8/97); 702 So.2d 818, writ denied, 97-2737 (La.1/16/98); 706 So.2d 979.

. La.Code Civ.P. art. 966(B).

. Townley v. City of Iowa, 97-493 (La.App. 3 Cir. 10/29/97); 702 So.2d 323.

. Id.

. Kumpe v. State, 97-386 (La.App. 3 Cir.10/8/97); 701 So.2d 498, writ denied, 98-50 (La.3/13/98); 712 So.2d 882.

. Id.

. Id.

. Soileau, 702 So.2d 818.

. Id.

. Rivere v. Union Pacific R. Co., 93-1132 (La.App. 1 Cir. 10/7/94); 647 So.2d 1140, writ denied, 95-292 (La.3/24/95); 651 So.2d 295.

. La.R.S.32:169; Rivere, 647 So.2d 1140.

. Greer v. Dresser Indus., Inc., 98-129 (La.App. 3 Cir. 7/1/98); 715 So.2d 1235, writ denied, 98-2094 (La.11/6/98); 728 So.2d 867.

. Fry v. Southern Pacific Transp. Co., 30,540 (La.App. 2 Cir. 6/24/98); 715 So.2d 632, writs denied, 98-1986, 98-2033 (La.10/30/98); 727 So.2d 1170; 728 So.2d 387.

. 97-1843 (La.4/14/98); 712 So.2d 491.

. Thibodeaux v. Ferrellgas, Inc., 98-862 (La. App. 3 Cir. 1/6/99); 741 So.2d 34, writ denied, 99-366 (La.3/26/99); 739 So.2d 797.