772 So.2d 999 (2000)
Robert J. HARGETT and Josette Hargett
v.
Daniel N. HARGETT, Sr.
No. 00-799.
Court of Appeal of Louisiana, Third Circuit.
December 6, 2000.
*1000 Raymond M. Allen, Allen Law Office, Lafayette, LA, Steven I. Klein, New Orleans, LA, Ricardo A. Aguilar, Edward L. Fenasci, McGlinchey Stafford, PLLC, Counsel for Yvette Hargett.
Lawrence N. Curtis, Curtis & Lambert, Lafayette, LA, Sue Fontenot, Abbeville, LA, Counsel for Robert J. Hargett and Josette Hargett.
Court composed of Judge SYLVIA R. COOKS, Judge MARC T. AMY and Judge ELIZABETH A. PICKETT.
AMY, Judge.
This breach of fiduciary duty action stems from the plaintiff's sale of his one-half interest in a closely-held corporation. He asserts that the defendant, also a fifty-percent shareholder and the purchaser of the plaintiff's interest, improperly withheld information at the time of the transaction. Summary judgment was entered in favor of the defendant. The plaintiff appeals. For the following reasons, we affirm.

Factual and Procedural Background
The record indicates that Robert and Daniel Hargett were each fifty-percent shareholders in a closely-held corporation, CSI Hydrostatic Testers, Inc. (CSI). The company provided oil and gas pipeline testing to the oilfield industry. The underlying basis for this suit arose in 1995 when Robert Hargett, the plaintiff, became interested in selling his interest in the company. The record reveals that he acquired an attorney and an accountant to *1001 assist him in the transaction and, in January 1996, the plaintiff and CSI entered into an agreement whereby CSI agreed to acquire the plaintiff's interest. In April of 1996, the sale closed and Daniel Hargett became the sole shareholder in the company. The plaintiff was paid approximately $2,300,000 for his interest in the company.
According to affidavits filed into the record, CSI and TransCoastal Marine Services, Inc., a holding company, entered into a Confidentiality Agreement in May 1997, and began negotiations regarding TransCoastal's acquisition of CSI. On October 29, 1997, the sale of CSI to TransCoastal was closed and became effective on October 30, 1997, the same day TransCoastal offered its stock in an initial public offering. Robert Hargett alleges that Daniel Hargett received in excess of $50,000,000 for the sale of CSI to TransCoastal.
In March 1998, Robert and his wife, Josette, filed suit against Daniel Hargett for breach of fiduciary duty.[1] In the petition, the plaintiff alleged that, at the time of his sale of his interest in CSI, the defendant had knowledge and was involved in communications regarding the subsequent acquisition by TransCoastal and ultimate initial public offering of its common stock. The defendant[2] filed a motion for summary judgment, attaching to it affidavits and deposition testimony regarding the transactions in an attempt to demonstrate that the acquisition had not been contemplated by those involved and thus, no such knowledge could have been acquired or communications taken place. The summary judgment was granted and the action dismissed.
The plaintiff appeals, presenting the following issues for review:
(1). Whether Yvette B. Hargett's summary judgment evidence was sufficient to carry her burden of proof under LSA C.C.P. Art. 966(B)?
(2). Whether Robert and Josette Hargett's summary judgment evidence was sufficient to carry their burden of proof under LSA R.S. C.C.P. Art. 967 and thus preclude the rendition of summary judgment.
The plaintiff has also filed a Motion to Strike regarding an attachment of legislative minutes to the defendant's brief.

Discussion

Movant's Burden of Proof
In his brief to this court, the plaintiff alleges that the defendant failed to carry the burden required for summary judgment of this matter. Important to the discussion, is the plaintiff's contention that the petition did not, only, institute suit for breach of fiduciary duty with regard to knowledge acquired and communications made during the time of the sale of his interest in CSI. Rather, the plaintiff contends that the petition generally alleged breach of fiduciary duty stemming from the transaction. In particular, he argues that the defendant was required to bear the burden of proving that the price paid for his interest in CSI was fair market value. For a number of reasons, we find the plaintiff's argument to be without merit.
We first consider the requirements for a successful motion for summary judgment. La.Code Civ.P. art. 966 provides, in part:

*1002 A. (1) The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
(2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.
B. The motion for summary judgment and supporting affidavits shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
C. (1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
Article 967 further instructs, in part:
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
On review, an appellate court considers the disposition of a motion for summary judgment de novo. Hardy v. Bowie, 98-2821 (La.9/8/99); 744 So.2d 606.
Before considering whether the defendant, as the moving party, fulfilled the burden of proof required to succeed on a motion for summary judgment, we first address the plaintiff's contention that the defendant was required to demonstrate that the sale was for fair market value. The defendant asserts that this basis for a cause of action for breach of fiduciary duty was not alleged in the petition and, furthermore, that this argument is being made for the first time on appeal. In his reply brief, the plaintiff contends that the view offered by the defendant would "have this Court return Louisiana law to the state in which it existed prior to enactment of LSA-C.C.P. Art. 862, i.e., when a litigant was required to plead a `theory of the case' and adhere to it throughout the litigation." The plaintiff argues that the petition alleges facts "such that considerations of whether the transaction between Daniel N. Hargett, Sr., and Robert Hargett was an arms-length transaction and whether Robert Hargett received market value for his ownership interest in CSI Hydrostatic Testers, Inc., were properly before the District Court." Our review of the petition and the record on this matter indicates that this assertion is without merit.
*1003 The difficulty with the plaintiff's position in this regard is twofold. First, our review of the petition indicates that the plaintiff's position is not supported by his reference to the "theory of the case" doctrine. Next, even if the petition was sufficient to permit the plaintiff to pursue the "fair market value" avenue of recovery, he is making this argument for the first time on appeal.
The plaintiff correctly points out that a party is not required to plead a theory of the case and adhere to that theory throughout the case. La.Code Civ.P. art. 862 provides that "a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief." However, the requirements of "fact pleading" are still a consideration, one not addressed by the plaintiff. In Fitzgerald v. Tucker, 98-2313, p. 7 (La.6/29/99); 737 So.2d 706, 713, the Louisiana Supreme Court explained:
Our code of civil procedure sets forth a system of fact pleading. Cox v. W.M. Heroman & Co., 298 So.2d 848, 855 (La. 1974). Article 854 provides that "all allegations of fact of the petition ... shall be set forth in numbered paragraphs." The Code further provides that a petition must contain "a short, clear, and concise statement of ... the material facts of, the transaction or occurrence that is the subject matter of the litigation...." La.C.Civ.Pro. art. 891(A). To plead "material facts," the petitioner must allege more than mixed questions of law and fact, such as that the defendant breached the contract or acted unreasonably. FRANK L. MARAIST & HARRY T. LEMMON, 1 LOUISIANA CIVIL LAW TREATISE CIVIL PROCEDURE § 6.3 at 102 (1999). Rather, "[t]he Code requires the pleader to state what act or omission he or she will establish at trial." Id. (footnote omitted).
Fact pleading advances several goals of the petition, such as satisfying the defendant's constitutional guarantee of due process by providing the defendant with fair notice, limiting the issues before the court, and notifying the defendant of the facts upon which the plaintiff bases his claims. See Id. at 101.
Although this matter is not necessarily a "fact pleading" case, the considerations described in Fitzgerald provide guidance with regard to the parties' arguments in this area. Our review of the petition indicates that the plaintiff's claims were wholly related to the defendant's alleged failure to inform the plaintiff of knowledge he allegedly had at the time of the sale of the plaintiffs sale of CSI. The alleged knowledge related to the subsequent acquisition of CSI by TransCoastal.[3] While true *1004 that La.Code Civ.P. art. 864 does not require the plaintiff to allege his exact theory of the case, i.e., every way in which he intends to prove that the defendant breached the fiduciary duty owed, the Code of Civil Procedure requires him to allege a sufficient factual background to provide the defendant with fair notice. This petition does not provide such notice with regard to the plaintiffs contention on appeal that he alleged sufficient facts to support a cause of action for breach of fiduciary duty related to whether he was paid a fair market value for his interest in the company. Accordingly, the plaintiffs contention regarding "theory of the case" is erroneous.
Furthermore, the plaintiff makes no mention that his argument regarding fair market value or arms-length transactions is apparently made for the first time on appeal. Reference to all filings in the record indicate that this case, up until the time of appeal, has been one in which the parties were focused on the knowledge of the defendant, whether there were any communications regarding the acquisition by TransCoastal, and whether any such knowledge/communications were disclosed to the plaintiff. In fact, the plaintiffs memorandum in opposition to summary judgment reveals the plaintiff argued at that time only that, when the element of knowledge is required for recovery, summary judgment is inappropriate, an argument that will be discussed below. In fact, the wording of the plaintiffs opposition at that time clearly indicates the parties were *1005 proceeding to trial under the impression that knowledge of the upcoming acquisition by TransCoastal was the only issue before the court.[4] There is no indication in the memorandum that the plaintiff was arguing that the defendant, as the moving party, failed to produce evidence regarding fair market value or arms-length transactions. Neither do we have indication that the trial court was apprised of any such argument at the hearing held on the motion for summary judgment as the transcript of the hearing is not contained in the record.
Rule 1-3 of the Uniform Rules, Courts of Appeal indicates that "[t]he Courts of Appeal will review only issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise." Having examined the petition and the record in its entirety, including the plaintiff's memorandum in opposition to summary judgment, we conclude that the plaintiff's argument regarding the defendant's failure to produce summary judgment evidence regarding fair market value of the stocks is presented for the first time on appeal. Thus, as it was not before the trial court, it is inappropriate for consideration by this court. See Whitney Nat. Bank v. F.W.F., Inc., 93-1152 (La.App. 4 Cir. 3/29/94); 635 So.2d 361, writ denied, 94-1546 (La.9/23/94); 642 So.2d 1301.

Sufficiency of the Defendant's Evidence in Support
We now address the plaintiff's alternative argument that the affidavits and deposition testimony presented in support of the motion for summary judgment were insufficient to establish that he would be unable to establish that the defendant had knowledge of the merger/acquisition at the time of the purchase of the plaintiff's interest in CSI. In particular, he argues that this particular element of the case, "knowledge," is inappropriate for summary judgment.
As stated repeatedly, the plaintiff alleged that the defendant was privy to information regarding the upcoming acquisition by TransCoastal at the time the plaintiff sold his interest in CSI. The defendant filed several exhibits in support of the motion for summary judgment indicating that this was not possible as the concept of the merger of the four companies and the prospect of the public offering had not manifested itself at the time of the sale of the plaintiff's interest in the company. For example, the affidavit of R. Todd Soltow was attached wherein Soltow, the corporate controller of CSI during the period in question, stated that beginning in 1995, the plaintiff began to express interest in retiring. He acquired an attorney and an accountant to assist him and, in January 1996, CSI and the plaintiff reached an agreement wherein CSI agreed to purchase the one-half interest. The sale was closed in April 1996. Soltow stated that later, in April 1997, he and the defendant, Daniel Hargett, met with others for the first meeting regarding the transaction that led to the purchase by TransCoastal. He stated that he believed the first meeting was in April 1997. A *1006 Confidentiality Agreement was entered into in May 1997, negotiations began, and, in October 1997, CSI was acquired by TransCoastal.
Further submitted by the defendant was the affidavit of Gerald F. Palliser, the Senior Vice President of Administration of CSI at the time in question. Similar to Soltow, he stated that the purchase from the plaintiff was closed in April 1996, and that afterwards, in April 1997, he and the defendant attended the first meeting regarding the TransCoastal acquisition. He stated that, to the best of his knowledge, the defendant had been to no prior meetings regarding the acquisition.
Turning attention to the TransCoastal side of the transaction, the defendant presented affidavits indicating that the parties organizing the acquisition of CSI by TransCoastal did not contact the defendant until well after the sale/purchase of the plaintiff's interest. Jean Savoy, one of the owners of J & D Capital, stated that he and Gerard Darcy Klug formed J & D to provide consulting services to Red Fox International, Inc., a Louisiana corporation he referred to in his affidavit as Louisiana Red Fox. He stated that "Louisiana Red Fox had been incorporated on March 29, 1996, in connection with an unsuccessful transaction pursuant to which Louisiana Red Fox attempted to acquire several companies to create a fully integrated offshore construction company." He further stated that "[n]either CSI ... nor any of its shareholders, directors, officers or employees were contacted or involved in any way in this unsuccessful transaction." Later, the stock of Louisiana Red Fox was transferred into a company referred to by Savoy as Delaware Red Fox, which was incorporated in Delaware on February 26, 1997. In August 1997, Delaware Red Fox changed its name to TransCoastal. Prior to the name change, on February 19, 1997, J & D entered into a consulting contract in which J & D agreed to "identify companies suitable for acquisition by TransCoastal, and provide financial consulting services in connection with the acquisitions by and operations of TransCoastal." Targeted for acquisition were four companies. Negotiations with some of the companies initially considered were terminated. Savoy stated that negotiations with one of the four companies, Crain Brothers, was mutually terminated in April 1997 and that "J & D, TransCoastal, Darcy Klug and Jean Savoy then decided that Darcy Klug would contact CSI through its president, Daniel N. Hargett, Sr...., to discuss for the first time the acquisition of CSI by TransCoastal." He stated that Klug spoke to Daniel Hargett in April 1997 and "for the first time explained to Dan Hargett that TransCoastal might be interested in acquiring CSI and for the first time discussed with Dan Hargett the TransCoastal Transaction." Savoy explained that, before this phone call, "neither Dan Hargett, nor any one employed by, representing or acting on behalf of CSI had ever been contacted by Darcy Klug, Jean Savoy, J & D, Louisiana Red Fox, Delaware [R]ed Fox or TransCoastal about the possible acquisition of CSI by TransCoastal or about the TransCoastal Transaction." Savoy also stated that the first meeting took place in April 1997 and that the second meeting took place in May 1997. Again, the Confidentiality Agreement was signed in May 1997 and negotiations ensued. Darcy Klug's affidavit was also submitted and reflects essentially the same series of events.
The affidavit of Clifford Earl McFarland, the President and Senior Managing Director of McFarland, Grossman & Company (McFarland), and that of Peggy S. Boyer, a Director with McFarland at the time, are also contained in the defendant's submission. They each stated that McFarland entered into a contract with Red Fox International, Inc./TransCoastal to provide financial and investment banking services in connection with TransCoastal's ultimate acquisition of several companies and the sale of its stock in an initial public offering. They each stated that *1007 CSI was not one of the initial target companies and they became aware of Trans-Coastal's interest in acquiring CSI in April 1997.
The plaintiff's deposition was also filed as part of the defendant's submission. The deposition provided general information regarding the plaintiffs motivation for selling his interest in CSI and his statement that Daniel Hargett proposed waiting to close the sale until negotiations with the Internal Revenue Service, in a matter unrelated to this case, had ceased.
Examining the defendant's submission as a whole, it is clear that the burden of the moving party has been satisfied. The affidavits demonstrate that the sale of the plaintiffs interest in CSI was closed in April 1996. Not until February 1997, did TransCoastal contract with J & D to identify companies for acquisition and, not until March 1997, was CSI considered a target company. The evidence indicates that contacts between J & D/TransCoastal and Daniel Hargett were not made until April 1997. Thus, even without benefit of Daniel Hargett's statement, the evidence is clear that it would have been impossible for him to have knowledge of an impending acquisition or been involved in any communications as the concept of the TransCoastal acquisition was not in existence at the time of the plaintiffs sale of his interest. In sum, based on the movant's submission, the factual basis necessary for the breach of fiduciary duty suit instituted by the plaintiff could not be made out.
Next, we turn to the plaintiffs evidence, submitted in opposition to the motion for summary judgment, to see whether he, as the nonmoving party, has shown that the cause of action can be satisfied. The plaintiff submitted a three-page excerpt of Darcy Klug's deposition wherein Klug described an informal discussion he and "Jean," presumably Jean Savoy, had regarding the creation of a holding company as early as February or March 1996. He identified this early company as Red Fox International, Inc., a Louisiana Corporation. He also affirmed that a portion of TransCoastal's prospectus identified TransCoastal as having been formed in April 1996.
In his brief in opposition to the motion for summary judgment, the plaintiff considers the evidence discussed in the above-paragraph and states that "the formation of TransCoastal at the exact time that Daniel Hargett acquired Robert Hargett's interest in CSI is sufficient to create a genuine issue of material fact with regard to Daniel Hargett's knowledge of the future merger of CSI into TransCoastal."
This evidence was insufficient for the plaintiff to demonstrate that he could establish the type of knowledge or communications alleged in the petition. This is particularly true when, considering the affidavits of Savoy and Klug, the formation of Red Fox International, Inc., in 1996 was consistent with their discussion of a first, failed attempt to form a holding company. There is no indication that this early formation of Red Fox as a Louisiana corporation, which only later became a Delaware corporation and then, ultimately, TransCoastal, in any way related to the later, separate acquisition of CSI. Not only are the affidavits of Savoy and Klug clear on this point, but the entirety of Klug's deposition,[5] from which the excerpt described above was taken, plainly evidences that the attempted venture in 1996 and the successful TransCoastal transaction were separate ventures, even if connected by the Red Fox history described by Savoy and Klug. The plaintiff has simply failed to demonstrate any knowledge regarding the upcoming acquisition by Klug or even that any such knowledge was possible as the evidence before the court indicates that no such acquisition had yet been contemplated *1008 at the time of the sale of his interest in CSI.
Finally, we address the plaintiffs contention that, because "knowledge" is at issue, this matter is inappropriate for summary judgment. In support of this, he points to an excerpt from Gautreaux v. Southern Pac. Transp. Co., 99-1045 (La. App. 3 Cir. 12/8/99); 757 So.2d 726, wherein a panel of this court considered a motion for summary judgment filed by a defendant governmental entity in a suit stemming from a truck/train collision in Jefferson Davis Parish. As a governmental entity, the plaintiff was required to show actual or constructive knowledge of an unreasonably dangerous condition. In finding that the defendant failed to demonstrate the appropriateness of summary judgment, the court stated:
Initially, we hold that Ms. Gautreaux's suit may not be dismissed simply because there may be no evidence creating a genuine issue of material fact regarding JDP's knowledge that the crossing was unreasonably dangerous. Indeed, because it is based on the determination of subjective facts, the issue of knowledge is rarely appropriate for summary judgment.
Id. at p. 4; 729 (footnote omitted).
The plaintiff asserts at the close of his brief that this excerpt demonstrates that the court in Gautreaux "held that a plaintiffs suit cannot be dismissed simply because there may be no evidence creating a genuine issue of material fact regarding a defendant's knowledge." We disagree and point out the court observed that when subjective factors such as knowledge are involved, summary judgment is rarely appropriate. The statement does not stand for the proposition that summary judgment is always precluded in such cases. Next, the "knowledge" element was only one of many before the court in Gautreaux. In fact, the above excerpt is all that is observed by the court with regard to the knowledge element before turning its attention to longer, more substantive discussion elsewhere in the opinion.
Here, the question is not one of general knowledge that a party could have acquired in a variety of ways, over a period of time, as may have been at issue in Gautreaux. Rather, the specific question here was whether Daniel Hargett had specific knowledge, at the time of the plaintiffs sale of his interest in the company, of the subsequent transaction with TransCoastal. In this instance, the defendant has demonstrated that the basis for knowledge the plaintiff alleges existed at the time of the sale, did not arise until after the sale of the plaintiffs interest in the company. As stated above, the plaintiff has not sufficiently countered this evidence. Simply put, the evidence here shows that there was no impending transaction of which Daniel Hargett could have known, quite a different situation than that possibly encountered in Gautreaux.

Motion to Strike
The plaintiff has filed with this court a Motion to Strike and asserts that this court should not consider an attachment to the defendant's brief. The attachment at issue is a copy of minutes of a March 30, 1999, meeting of the House Committee on Civil Law and Procedure. The plaintiff contends that this attachment is "evidence" that was not entered into the record of the trial court and, thus, should not be considered by this court.
In denying this motion, we observe that the minutes are not evidence as urged by the plaintiff. Rather this type of legislative history may, in an appropriate case, provide guidance to the court. In any event, because the minutes are relevant to an issue presented for the first time in this court, and therefore not addressed, they are not relevant to our ultimate conclusion.

DECREE
For the foregoing reasons, the grant of the motion for summary judgment by the trial court and in favor of Daniel N. Hargett, *1009 Sr. and Yvette B. Hargett, Testamentary Executrix of the Succession of Daniel N. Hargett, is affirmed. The Motion to Strike is denied. All costs of this appeal are assessed to the plaintiff, Robert J. Hargett.
AFFIRMED. MOTION TO STRIKE DENIED.
NOTES
[1] In the motion for summary judgment, the defendant alleged that Josette Hargett had no interest in the proceeding as she and the plaintiff were not married at the time of the negotiation and subsequent sale of the one-half interest in CSI. Although not specifically addressed in the judgment contained in the record, the matter was dismissed as to both plaintiffs. The plaintiff does not contest Josette's dismissal. For case of discussion, Robert Hargett will be referred to as "plaintiff" throughout our discussion rather than referring to him and his wife as "plaintiffs."
[2] The record indicates that Daniel Hargett died on May 29, 1998. In July 1998, his widow and testamentary executrix of his estate, Yvette B. Hargett, was substituted as the defendant in this case.
[3] For reference we set forth below relevant portions of the plaintiff's petition. He alleges:

5.
That, your plaintiffs are informed, believe and therefore state that in late 1995 and in early 1996, Defendant, Daniel N. Hargett, Sr., as an officer and shareholder in CSI engaged in certain conversations, communications and negotiations with others with the intention to enter into an agreement to ultimately consolidate four separate marine construction businesses; namely, The Woodson Companies, CSI, HBH, Inc. and The Red Fox Companies of New Iberia, Inc. to be known as TransCoastal Marine Services, Inc.
6.
That, TransCoastal Marine Services, Inc. was, in fact, organized in April of 1996 to become a fully integrated marine construction company focusing on the transition zone and shallow water regions along the U.S. Gulf Coast. TransCoastal Marine Services, Inc. entered into definitive agreements to acquire, among others, CSI.
7.
That, at all times relevant herein, Defendant, Daniel N. Hargett, Sr., as a corporate officer and shareholder of CSI, and, in consequence, owed a fiduciary duty to CSI and to its shareholders. That fiduciary duty required that:
"Officers and directors shall be deemed to stand in a fiduciary relation to the corporation and its shareholders, and shall discharge the duties of their respective positions in good faith, and with that diligence, care, judgment and skill which ordinarily prudent men would exercise under similar circumstances in like positions."
8.
That, at all times relevant herein, Defendant, Daniel N. Hargett, Sr., as a corporate officer of CSI was obligated to disclose facts within his knowledge to Robert J. Hargett and to deal with him in an atmosphere and [sic] trust and confidence.
9.
That, at all times relevant herein, Defendant, Daniel N. Hargett, Sr., failed to disclose to Robert J. Hargett that he was engaged in certain conversations, communications and negotiations with others with the intention to enter into an agreement to ultimately consolidate four separate marine construction businesses; namely, The Woodson Companies, CSI, HBH, Inc. and The Red Fox Companies of New Iberia, Inc. to be known as TransCoastal Marine Services, Inc.
10.
That, at all times relevant herein, Defendant, Daniel N. Hargett, Sr. failed to disclose to Robert J. Hargett, that TransCoastal Marine Services, Inc. intended to offer its common stock for sale to the public through the NASDAQ Exchange.
11.
That, at all times relevant herein, Defendant, Daniel N. Hargett, Sr. failed to disclose to Robert J. Hargett, that CSI was to be sold to TransCoastal Marine Services, Inc. for cash and shares of TransCoastal Marine Services, Inc. in an amount believed to be in excess of $50,000,000.00.
12.
That, in early January of 1996, Defendant, Daniel N. Hargett, Sr., offered to purchase Robert J. Hargett's interest in CSI; that is, 83 1/3 shares of common stock (one-half of its outstanding shares) for the sum of $2,300,000.00 in cash, plus the forgiveness of a $264,000.00 receivable.
13.
That, however, at no time did Defendant, Daniel N. Hargett, Sr., ever disclose to Robert J. Hargett that a sale of the stock of CSI to TransCoastal Marine Services, Inc. was imminent and that an initial public offering of the common stock of TransCoastal Marine Services, Inc. was projected to occur in the fall of 1997.
14.
That, at all times relevant herein, Defendant, Daniel N. Hargett, Sr., knew or should have known that had he disclosed to Robert J. Hargett that a sale of the stock of CSI to TransCoastal Marine Services, Inc. was imminent and that an initial public offering of the common stock of TransCoastal Marine Services, Inc. was projected to occur in the fall of 1997, Robert J. Hargett would have demanded that the value of his ½ interest in CSI be computed in such a way as to account for the enhanced value of his stock interest in CSI due to the proposed consolidation and sale to TransCoastal Marine Services, Inc.
15.
That, therefore, Defendant, Daniel N. Hargett, Sr., did breach the fiduciary duty which he owed to Robert J. Hargett, by failing to act in good faith and with that diligence, care, judgment, and skill, which ordinary prudent men would exercise under similar circumstances.
[4] In his opposition, the plaintiff framed the contest as follows:

Plaintiffs contend that at the time that Daniel Hargett acquired his interest in the company, he knew that CSI would be merged with three similar companies into TransCoastal Marine Services, Inc. (TransCoastal) and offered to the public at a considerable profit to the shareholders. He deliberately withheld this information in order to keep all of the profits for himself.
Defendant has now moved for a summary judgment on grounds that there is no genuine issue of material fact with respect to Daniel Hargett's knowledge about the merger of CSI when he acquired Robert Hargett's interest in the company. Defendant has attached to the Motion affidavits of individuals attesting to the fact that Daniel Hargett was not approached about the merger until after he acquired his brother's interest.
. . . .
The remainder of the argument related to appropriateness of summary judgment in cases where knowledge is at issue and the particular evidence produced by the parties.
[5] The entirety of the deposition was submitted at the hearing held on this matter and is contained in supplemental record to this court.